[*No. 30475. En Banc. May 6, 1948.*]

COLUMBIA STEEL COMPANY, *Appellant,* v. THE STATE
OF WASHINGTON, *Respondent.*[1]

*Evans, McLaren, Lane, Powell & Beeks* (*Walter Shelton* and *Thomas Ashby,* of counsel), for appellant.

*The Attorney General* and *Max Kaminoff, Assistant,* for respondent.

SIMPSON, J.—This action was instituted by plaintiff when it filed its complaint, for the recovery of taxes paid, and as a notice of appeal from a deficiency assessment levied by the state tax commission.

The pertinent allegations of the complaint are: Plaintiff is a Delaware corporation and is qualified to transact business in the states of Washington, California, Utah, and Oregon. Its principal place of business is in San Francisco,

[1]Reported in 192 P. (2d) 976.

California, but it maintains a sales office in this state, whose personnel consists of salesmen residing in the state of Washington. Plaintiff manufactures iron and steel products, and the by-products thereof, in California, Utah, and Oregon. It is engaged in foreign, interstate, and intrastate commerce.

October 3, 1947, the tax commission of the state of Washington levied a deficiency, or additional, assessment against plaintiff in the sum of $101,105.23, together with interest and penalties thereon, which made a total of $118,281.38. The deficiency assessment covered the years 1943, 1944, and 1945. It was based upon the business and occupation tax imposed upon persons engaged within the state in the business of making sales at wholesale, by chapter 180, p. 706, Laws of 1935, as amended by chapter 156, Laws of 1943, p. 487 (Rem Supp. 1943, § 8370-4 [P.P.C. § 965-1] *et seq.*), in an amount equal to the gross proceeds of such business, multiplied by the rate of one quarter of one per cent. Plaintiff paid the assessment October 22, 1947, and then brought this action to recover.

Plaintiff owns a warehouse in the city of Seattle, but uses it only in connection with its intrastate and local business. Twenty per cent of the interstate business consists of the handling of iron and steel products and by-products manufactured by plaintiff in the states of California and Utah, which, when sold, are delivered from those states into the state of Washington by common carriers, who transport the products from the state of origin into this state on straight bills of lading to various customers in the state. Dealing in products purchased from manufacturers in Massachusetts, Pennsylvania, Ohio, Indiana, Illinois, Minnesota, Alabama, and other states and then shipped by common carrier from the states of manufacture into this state, comprised eighty per cent of plaintiff's business upon which the deficiency assessment was based. Forty per cent of the business on which the assessment was based, was done upon contracts negotiated, made, and concluded outside the state of Washington, with the result that the only thing that

transpired in the state of Washington was the delivery of the steel products to various customers by common carriers. The remainder of the business was done upon contracts negotiated, made, and concluded through the joint efforts of plaintiff's sales personnel residing in this state, and other employees and officers of plaintiff residing and having their offices in other states. The deficiency assessment is based upon a tax upon amounts derived from business which the state of Washington is prohibited from taxing under clause 3, Art. I, § 8, of the constitution of the United States.

The state tax commission demurred on the ground that the complaint did not constitute a cause of action. The court sustained the demurrer and, upon refusal of the plaintiff to plead further, entered judgment dismissing the action. Plaintiff then appealed to this court.

Appellant's assignments of error are: (1) the sustaining of the demurrer; and (2) the determination that the tax assessed and collected was not in violation of Art. I, § 8, of the constitution of the United States.

The tax here involved is the Washington state business and occupation tax, Rem. Supp. 1943, § 8370-4 *et seq.*, which, so far as this case is concerned, imposes a tax upon those making sales at wholesale, at the rate of one quarter of one per cent of the gross sales proceeds. Appellant's contention is that the business and occupation tax law, as applied to its transactions in interstate commerce, violates the commerce clause of the constitution of the United States. Respondent takes the position that gross receipts taxes, measured by the gross proceeds from interstate sales, when imposed by the state of the buyer, are legal, and not within the prohibition of the Federal constitution.

There have been hundreds of cases decided which deal with the imposition of taxes of the nature here involved. However, our view of the applicable rules of law makes it unnecessary to review many of the cases on the subject of taxing interstate commerce in so far as this case is concerned. The one question presented here is: May this state collect from those engaged in interstate commerce, taxes

based on our business and occupation tax, Rem. Supp. 1943, § 8370-4 *et seq.*?

The portions of the statute calling for our interpretation are as follows:

"From and after the first day of May, 1935, there is hereby levied and there shall be collected from every person a tax for the act or privilege of engaging in business activities. Such tax shall be measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be."

Subd. (a) of this section levies a tax upon every person engaged within this state in business as an extractor.

Subd. (b) exacts a tax from "every person engaging within this state in business as a manufacturer."

Subd. (c) taxes every person in this state who is in the business of making sales at retail.

And subd. (e) imposes a tax upon those in this state who are wholesalers.

Rem. Supp. 1943, § 8370-5 (e), defines the term "sale at wholesale" or "wholesale sale" as "any sale of tangible personal property and any sale of or charge made for labor and services rendered in respect to real or personal property, which is not a sale at retail."

Subd. (j) of the above section reads:

"The word 'manufacturer' means every person who, either directly or by contracting with others for the necessary labor or mechanical services, manufactures for sale or commercial use from his own materials or ingredients any articles, substances or commodities. . . ."

Rem Supp. 1943, § 8370-6 [P.P.C. § 965-5] provides:

"Every person engaging in activities which are within the purview of the provisions of two or more of paragraphs (a), (b), (c), (d), (e), (f) and (g) of section 4 [§ 8370-4], shall be taxable under each paragraph applicable to the activities engaged in: *Provided, however, That persons taxable under paragraphs (a) or (b) of said section shall not be taxable under paragraphs (c) or (e) of said section with respect to making sales at retail or wholesale of products extracted or manufactured within this state, by such persons.*" (Italics ours.)

 Regardless of the uncertainty on the question of what types of state taxation on interstate commerce are allowable, it may be definitely stated that any tax which places interstate commerce at a disadvantage in competition with local commerce, is prohibited by the Federal constitution.

In passing upon that question in *Gwin, White & Prince, Inc. v. Henneford,* 305 U. S. 434, 83 L. Ed. 272, 59 S. Ct. 325, the supreme court of the United States made the following holding:

"But it is enough for present purposes that under the commerce clause, in the absence of Congressional action, state taxation, whatever its form, is *precluded if it discriminates against interstate commerce.*" (Italics ours.)

The court further said:

"For more than a century, since *Brown v. Maryland,* 12 Wheat. 419, 445, it has been recognized that under the commerce clause, Congress not acting, some protection is afforded to interstate commerce against state taxation of the privilege of engaging in it. [Citing cases.] For half a century, following the decision in *Philadelphia & Southern S. S. Co. v. Pennsylvania,* 122 U. S. 326, it has not been doubted that state taxation of local participation in interstate commerce, measured by the entire volume of the commerce, is likewise foreclosed."

Illustrative of this principle are the "drummer cases" culminating in *Nippert v. Richmond,* 327 U. S. 416, 90 L. Ed. 760, 66 S. Ct. 586, 162 A. L. R. 844. In holding unconstitutional a license tax upon persons soliciting sales, the court in the above case stated:

"The Richmond tax imposes substantial excluding and discriminatory effects of its own. As had been said, the small operator particularly and more especially the casual or occasional one from out of the State will find the tax not only burdensome but prohibitive, with the result that the commerce is stopped before it is begun."

 The argument is advanced that there is no showing that appellant in this case, or the people from whom it bought its products, paid a manufacturer's tax. This argument is effectually answered by the following quotation

from *Freeman v. Hewit,* 329 U. S. 249, 91 L. Ed. 265, 67 S. Ct. 274:

"It is suggested, however, that the validity of a gross sales tax should depend on whether another State has also sought to impose its burden on the transactions. If another State has taxed the same interstate transaction, the burdensome consequences to interstate trade are undeniable. But that, for the time being, only one State has taxed is irrelevant to the kind of freedom of trade which the Commerce Clause generated. The immunities implicit in the Commerce Clause and the potential taxing power of a State can hardly be made to depend, in the world of practical affairs, on the shifting incidence of the varying tax laws of the various States at a particular moment. Courts are not possessed of instruments of determination so delicate as to enable them to weigh the various factors in a complicated economic setting which, as to an isolated application of a State tax, might mitigate the obvious burden generally created by a direct tax on commerce. Nor is there any warrant in the constitutional principles heretofore applied by this Court to support the notion that a State may be allowed one single-tax-worth of direct interference with the free flow of commerce. An exaction by a State from interstate commerce falls not because of a proven increase in the cost of the product. What makes the tax invalid is the fact that there is interference by a State with the freedom of interstate commerce. Such a tax by the seller State alone must be judged burdensome in the context of the circumstances in which the tax takes effect. Trade being a sensitive plant, a direct tax upon it to some extent at least deters trade even if its effect is not precisely calculable. Many States, for instance, impose taxes on the consumption of goods, and such taxes have been sustained regardless of the extra-State origin of the goods, or whether a tax on their sale had been imposed by the seller State. Such potential taxation by consumer States is but one factor pointing to the deterrent effect on commerce by a superimposed gross receipts tax."

■ It is further argued that, if the state in which the product is manufactured does not impose a manufacturer's tax, then the people engaged in interstate commerce in the state of Washington selling their products here, have an advantage in that they can sell at a price lower than that which must be fixed by local extractors or manufacturers.

As indicated in the above opinion, the situation obtaining in another state is immaterial. We must interpret the statute as passed by the legislature. In our opinion, the statute marks a discrimination against interstate commerce in levying a tax upon wholesale activities of those engaged in interstate commerce, which tax is, because of the exemption contained in § 8370-6, not levied upon those who perform the same taxable act, but who manufacture in the state of Washington. The statute is therefore violative of the commerce clause of the Federal constitution, and is invalid.

The judgment will be reversed, with instructions to the trial court to overrule the demurrer.

MILLARD, STEINERT, JEFFERS, BEALS, and SCHWELLENBACH, JJ., concur.

HILL, J. (dissenting)—I dissent. The decisions in the field of taxation with which we are here concerned represent "confusion worse confounded"; the only thing that is clear to me is that the supreme court of the United States recently decided the precise question presented here and held that such a tax, imposed by the state of Indiana, did not violate the commerce clause of the Federal constitution. *Allied Mills v. Department of Treasury of State of Indiana,* 318 U. S. 740, 87 L. Ed. 1120, 63 S. Ct. 666, affirming *per curiam* 220 Ind. 340, 42 N. E. (2d) 34; *International Harvester Co. v. Department of Treasury,* 322 U. S. 340, 88 L. Ed. 1313, 64 S. Ct. 1019, 1030.

These cases seem to me to be directly in point. They are not satisfactorily distinguished by the appellant and are ignored by the majority.

The judgment of dismissal of appellant's amended complaint should be affirmed.

MALLERY, C. J., concurs with HILL, J.

September 20, 1948. Petition for rehearing denied.